No. 37,704

GLENN I. VOYLES, C. H. BJERKNES, NED B. EASTLACK, L. D. HOR-ROCKS, A. B. NUSS, F. D. MEAD, M. A. SWAN and L. F. KEPLEY, *Appellants,* v. GEORGE M. MYERS, *Appellee.*

(212 P. 2d 318)

Opinion filed December 10, 1949.

*J. B. McKay,* of El Dorado, argued the cause, and *Clem H. Silvers* and *James B. McKay, Jr.,* both of El Dorado, and *Clarence T. Spier* and *Alfred G. Ellick,* of Omaha, Neb., were with him on the briefs for the appellants.

*Gale Moss,* of El Dorado, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for money. Judgment was for defendant. Plaintiffs have appealed.

The petition first named eight plaintiffs and one defendant and gave their addresses; then stated that prior to January 20, 1943, plaintiffs and defendant and Hossack, Dettman and Wendstrand were stockholders of the Inland Construction Company, which had 2,300 shares of stock outstanding; on January 20, 1943, Hossack, Dettman and Wendstrand offered in writing to sell their stock to plaintiffs and defendant; this offer was attached to the petition; that plaintiffs and defendant accepted this offer and purchased the 1,220 shares owned by the three parties named, of which 140 shares

sold by Hossack were purchased by defendant for $160 per share; that the offer provided, in part, that—

"This offer to sell the Inland Construction Co. common stock is based and predicated upon renegotiation proceedings the net income for the year 1942 by about $259,000.00 or leaving a net income of about $100,000.00, subject to $40,000 federal taxes. If, after renegotiation the net income is more or less, adjustment is to be made between the buyers and sellers for any increase or decrease in net return to stockholders. Adjustment is also to be made on any increase or decrease in federal income and excess profits taxes for the years 1941 and 1942."

The petition further stated that after the renegotiation was finished the net income for 1942 was $81,333.89 after taxes or $21,332.89 more than the estimated amount in the offer to sell and plaintiffs thereby became jointly and severally liable to Hossack, Dettman and Wendstrand for $8.53 per share for the stock sold by them respectively; that plaintiffs paid to Hossack, Dettman and Wendstrand this amount and defendant failed to pay Hossack the amount due from him on account of the shares purchased by him and plaintiffs were compelled to and did pay him $8.53 per share, or $1,194.20, about December 31, 1946, at which time Hossack assigned to them any right of action they might have under the offer and acceptance; that defendants were indebted to plaintiffs in the sum of $1,194.20. Judgment was prayed for that amount.

The defendant's demurrer to this petition was overruled.

The defendant first answered with a general denial; he then admitted that he did sign certain documents but that since he had no copies denied plaintiffs' exhibits "A" and "B" to be true copies; he admitted that he bought certain shares of the Inland Construction Company, 40 shares, the property of Grace Hossack, and that his wife purchased 100 shares, part of which was owned by Grace Hossack, and a part by Hossack; that the offer of Hossack contained the provision already quoted in this opinion; that he had no knowledge of the renegotiation proceedings conducted by the war department with the Inland Construction Company, so the allegations with reference thereto were denied; he denied the allegation with reference to the payment of Hossack; denied that there had been any increase in net return to the stockholders of the Inland Construction Company on account of renegotiation proceedings; denied that he had ever been indebted to Hossack or the plaintiffs. The reply was a general denial.

The action was submitted to the trial court and on December

16, 1948, the court found the facts generally for the plaintiffs and against the defendant and gave judgment for $1,194.20.

The defendant's motion for a new trial was sustained. At the new trial the parties announced that it might be submitted on the record made at the first trial. On February 11, 1949, the trial court made a journal entry, in which was contained a statement, as follows:

"On and prior to January 20, 1943, plaintiffs and defendant and John Q. Hossack, Charles L. Dettman and Ralph T. Wendstrand were stockholders of Inland Construction Company; at all times material herein said Inland Construction Company had 2500 shares of capital stock outstanding; on January 20, 1943, said Hossack, Dettman and Wendstrand executed and delivered to plaintiffs and defendant a written offer to sell' their stock in Inland Construction Cpmpany, a true and correct copy of which is attached as Exhibit 'A' to plaintiffs' petition; that pursuant to said written offer to sell, plaintiffs and defendant accepted such offer in writing on January 23, 1943, a true and correct copy of said written acceptance being attached as Exhibit 'B' to the petition; that pursuant to such offer and acceptance, plaintiffs and defendant purchased all of the 1220 shares of the capital stock of Inland Construction Company described in said offer, of which defendant purchased 140 shares of the 500 shares sold by said Hossack, and certificates for such 140 shares were duly issued and delivered to defendant or his nominee, and defendant paid said Hossack therefor $160.00 per share, one-fourth in cash, and the remaining three-fourths by his promissory note as provided in said offer.

"The renegotiation proceedings referred to in said Exhibit 'A' were with the War Department, and were concluded during the year 1944, and the Federal income and excess profits tax liability of Inland Construction Company for the years 1941 and 1942 were finally determined during the year 1945, and that after said renegotiation proceedings had been concluded and such tax liability finally determined the net income of said corporation for the year 1942 was $81,333.89 after taxes, or $21,332.89 more than the estimated amount as stated in said Exhibit, and that plaintiffs paid to Hossack, Dettman and Wendstrand the sum of $8.53 per share for the stock purchased by plaintiff pursuant to said offer and acceptance. Exhibit 'A'; that defendant refused to pay Hossack the sum of $8.53 per share for the 140 shares purchased by defendant, and plaintiffs paid the same in the aggregate sum of $1194.20 on or about December 31, 1946, at which time Hossack executed and delivered to plaintiffs the assignment, a copy of which is attached to the petition as Exhibit 'C.'

"There was no 'net return to the stockholders' of Inland Construction Company of the sum of $8.53 per share by the declaration of dividends, and that defendant Myers had sold all of his stock in Inland Construction Company to said company prior to the time the renegotiation proceedings had been completed, and plaintiffs were the directors and stockholders of Inland Construction Company.

"That by reason of the premises plaintiffs are not entitled to recover, and judgment should be rendered for the defendant."

Judgment was entered for the defendant.

Plaintiffs filed a motion for a new trial on the grounds of abuse of discretion, erroneous rulings, judgment and decision contrary to evidence and newly discovered evidence.

This motion was overruled, hence this appeal.

The appeal is from the order of January 11, 1949, sustaining defendant's motion for a new trial, the order, judgment and decision of February 11, 1949, in favor of defendant and against the plaintiffs and the order of March 4, 1949, overruling plaintiffs' motion for a new trial.

The specifications of error are that the trial court erred in allowing defendant's motion for a new trial, in its interpretation of the meaning of the offer to sell, in making the following findings and conclusions:

"There was no 'net return to the stockholders' of Inland Construction Company of the sum of $8.53 per share by the declaration of dividends, and that defendant Myers had sold all of his stock in Inland Construction Company to said company prior to the time the renegotiation proceedings had been completed, and plaintiffs were the directors and stockholders of Inland Construction Company.

"That by reason of the premises plaintiffs are not entitled to recover, and judgment should be rendered for the defendant."

In their brief plaintiffs state the question to be, Did the court err in its interpretation of the contract and did the court err in making the findings and conclusions as set out above?

There is not much real dispute in the evidence. All parties concede the terms of the written offer, its acceptance and the result of the renegotiation and that the corporation made $21,332.89 more than was estimated would be made when the stock was sold. One of the plaintiffs testified that as a result of the renegotiation proceedings there was a net return to the stockholders of the Inland Construction Company of more than $60,000 spoken of in the offer. He testified further, however, that the money was in the surplus of the corporation and the individual stockholders received nothing personally as a result of the renegotiation. There seems to be no doubt about that. This testimony was no doubt what caused the trial court to make the statement "There was no 'net return to the stockholders' of Inland Construction Company of the sum of $8.53 per share by the declaration of dividends."

Plaintiffs argue that this statement indicates that the trial court had the wrong theory of the case. They argue that the trial court violated the rule that in the interpretation of a contract effect should be given to the real intent of the parties. They point out that the Inland Construction Company had been engaged in work for the war department and their contracts were subject to re-negotiation—hence no one could tell what would be the profits and on that basis Hossack, Dettman and Wendstrand were willing to sell so long as the buyers would agree to see that they should not lose. The authorities cited and relied on by plaintiffs to sustain this position are sound. They do not require the conclusion contended for by plaintiffs here, however. The offer of sale did provide that the adjustment in the price should depend on an increase or decrease in net return to the stockholders. Plaintiffs would have us interpret this offer as though it had provided that the adjustment should depend on net return to the corporation. They did not ask that the offer be treated as a contract and reformed, however. The trial court was justified in considering all the surrounding facts and circumstances. Defendant had sold his stock before the renegotiation proceedings were finished. The stock was closely held. Plaintiffs and defendant were the only stockholders. After defendant sold his stock, plaintiffs owned it all. As matters now stand, they as stockholders have profited by having the $21,332.89. Should they be permitted to prevail here they would have not only that amount in the treasury of the company but the $1,194.20 from defendant, which the defendant never did receive. We have concluded that a fair interpretation of the contract does not permit such a result.

Plaintiffs argue there was no evidence that defendant sold his stock to the company and the court erred in making such a finding. The defendant testified that he was paid for this stock by checks drawn on the company. His offer to sell was made to the stockholders of the Inland Construction Company and accepted by them by the president of it. This was substantial evidence that he sold his stock to the corporation.

The judgment of the trial court is affirmed.